986 So.2d 665 (2008)
STATE of Louisiana
v.
Glenn DAVIS.
No. 2008-KK-0534.
Supreme Court of Louisiana.
June 27, 2008.
Writ denied.
CALOGERO, Chief Justice, dissents from the denial of the writ application and assigns reasons.
I would grant the writ application to consider whether the defendant at the first trial "had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination," testimony that the State seeks to introduce at the forthcoming trial under La.Code Evid. art. 804(B)(1) because the State's eyewitness, Norman Jackson, is now deceased. The court of appeal, in my view, misapplied the reasoning of this court's per curiam decision in State v. Jones, 00-2837 (La.6/29/01), 791 So.2d 622, which did not involve either a Brady violation or conflicted trial counsel, to the instant case, where the defendant was granted a new trial on two grounds: (1) that the State had suppressed *666 material exculpatory evidence implicating Derrick Richardson as the true killer of the victim and statements from other witnesses on the scene indicating that the now-deceased eyewitness, Jackson, was not present when the shooting occurred and therefore could not have witnessed the victim's murder, and (2) that trial counsel labored under an actual conflict of interest which impaired his representation of the defendant because counsel had represented Richardson in the past and therefore could not, out of deference to that relationship and concerns for preserving attorney-client confidentiality, pursue an exculpatory hypothesis of innocence at trial that Richardson, and not the defendant Glenn Davis's companion Larry Delmore, identified by Jackson as the shooter, was the real killer.
The trial court clearly identified the issue before it when the State moved to introduce at the forthcoming trial a transcript of the testimony of the now deceased witness, that is: whether the cumulative effect both of the State's Brady violations and of the actual conflict of interest under which trial counsel labored at the first trial was such that trial counsel at the first trial did not possess the same or similar motive when cross-examining the now deceased witness as would non-conflicted counsel have had, armed with the suppressed impeachment and exculpatory evidence. Tr., 2-8-08, pp. 7-9. The trial court concluded trial counsel's performance had been rendered ineffective, such that the defendant had indeed been denied the opportunity for meaningful and effective cross-examination of the witness at the first trial because the State had suppressed evidence that pointed to Richardson and evidence that impeached the witness's credibility and because the defendant's trial counsel had in fact consulted about the killing of the victim with Richardson, trial counsel's other client whom the habeas court in the post-conviction proceeding had found to be a legitimate potential defendant in the killing of the victim. The trial court denied the State's motion to introduce the transcript of the testimony of the deceased witness, and thus implicitly found that the defendant's constitutional rights under the federal confrontation clause and his state constitutional right to cross examine witnesses against him would not be sufficiently protected by introducing the transcript of the testimony of the deceased witness at the new trial along with any new evidence admissible under the Code of Evidence.
La.Code Evid. art. 804(B)(1) permits the admission in evidence of former testimony as an exception to the hearsay rule when the "party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Overlaying this statutory exception, however, are the defendant's rights guaranteed by the confrontation clause of the Sixth Amendment to the United States Constitution and his rights under the Louisiana Constitution to a fair trial and to confront and cross-examine the witnesses against him, La. Const. art. I, § 16. Under U.S. v. Owens, 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988), the confrontation clause guarantees the accused "an opportunity for effective cross-examination...." Thus, the defendant's writ application brings into focus the meaning of "similar motive" and of "an opportunity for effective cross-examination," within the context of multiple Brady violations and trial counsel's actual conflict of interest. Accordingly, I would have granted the writ application to determine the correctness of the court of appeal's decision to allow introduction of the transcript at the forthcoming trial and to *667 examine the standard by which a trial court may determine similarity of motive and whether the defendant had had an adequate opportunity for effective cross-examination of the now deceased witness at the prior proceeding.
Although I would have granted the writ application because the defendant in my opinion has made a case under the jurisprudence and law that the transcript of the deceased witness's testimony should not be introduced at the forthcoming trial, it is nonetheless well within the province of the court to deny the writ at this juncture and not upset the interlocutory decision of the court of appeal. However, in my opinion, that ruling favorable to the State was prompted by the belief on the part of my colleagues that there is insufficient support in the record as presently made up to link the deceased eyewitness, Jackson, to the deceased alleged true killer, Richardson, before the night in question. Such evidence could have suggested some motivation, like fear perhaps, for the witness to misidentify the defendant and his companions, Delmore and Meyers, as the perpetrators of the killing. Additionally, the showing made by the defendant perhaps does not adequately expound on the assertion that there is some line of questioning foregone by, or denied to, conflicted trial counsel  whose testimony in the habeas proceeding was not available to this court  that would have exposed or developed the exculpatory evidence or further weakened the deceased witness's credibility.[1]
NOTES
[1] According to the trial court that granted the defendant a new trial, trial counsel testified during the post-conviction proceedings that he believed he could have developed the defense that Richardson was the true killer had he not been constrained by the actual conflict he had regarding Richardson and had the exculpatory and impeaching evidence been disclosed to him before trial.