791 So.2d 622 (2001)
STATE of Louisiana
v.
Terrence J. JONES.
No. 2000-KK-2837.
Supreme Court of Louisiana.
June 29, 2001.
Richard P. Ieyoub, Attorney General, Baton Rouge, Paul D. Connick, Jr., District Attorney, Metarie, Rebecca J. Becker, Gregory M. Kennedy, Quentin P. Kelly, Gretna, for Applicant.
Martin E. Regan, Jr., New Orleans, for Respondent.
PER CURIAM:[*]
In this pending prosecution for second degree murder in violation of La.R.S. *623 14:30.1, the trial court has determined that the state's withholding of a witness's prior statements before the hearing conducted on respondent's motion to suppress the witness's identification testimony so impaired the opportunity of the defense to cross-examine the witness, and the court's determination of the identification's reliability, that the state is precluded from introducing the witness's prior recorded testimony at trial upon a showing that he is no longer available to testify. La.C.E. art. 804(B)(1). We granted the state's application to reverse that ruling because the transcript of the suppression hearing shows clearly that even without benefit of the prior statements defense counsel not only had the opportunity to cross-examine the witness but also subjected him to a detailed testing of his ability to perceive accurately the events he related as the basis for identifying respondent. Moreover, notwithstanding the loss of the opportunity to confront the witness directly in court at trial, the defense will still have the opportunity to place before jurors the witness's prior statements and to argue what those statements may reveal about the accuracy of his identification. La.C.E. art. 806. In the present context, as in other instances of alleged prosecutorial misconduct, "the touchstone of due process analysis ... is the fairness of the trial, not the culpability of the prosecutor.... [T]he aim ... `is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused.'" Smith v. Phillips, 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78 (1982) (quoting Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963)).
James Artberry, Jr., made the statements at issue to Jefferson Parish Deputy Sheriff Michael Tucker on the morning of July 28, 1997, shortly after the victim's death. In his first statement, Artberry gave a skeleton outline of his activities earlier that night and claimed that while the shooting had taken place outside of his apartment as he stood on his front porch witnessing the events, he did not get a "good look" at the assailant because of the poor lighting in the area. In a second statement taken approximately 40 minutes later, after Deputy Tucker turned off his tape recorder and spoke to the witness off the record, Artberry acknowledged that he had been concealing some details about that evening. Artberry revealed that he had acted as an intermediary for the victim in an abortive drug transaction with respondent which was to have taken place outside of Artberry's apartment. Artberry informed Tucker that the drug deal went sour when the victim could not produce $20 for a rock of cocaine and respondent then shot and killed him in the dispute over payment. He also told Tucker that moments before the victim died, respondent turned and "looked at me, he said I fault you for this and then he shot the fellow." Artberry explained at the beginning of this second statement that he "was hiding some facts from the first statement `cause I was scared.'" Artberry subsequently identified respondent in the second of two photographic lineups conducted by Deputy Tucker.
At the hearing on respondent's motion to suppress Artberry's identification, the *624 attorney representing respondent conducted a wide-ranging cross-examination of the witness with regard to the circumstances under which he viewed the offense and then identified respondent's photograph. However, Artberry made no mention, and defense counsel did not confront him, with his prior statements, either to the effect that he could not identify the perpetrator or that he had initially concealed his ability to make an identification because he had played a role in precipitating the events which led to the victim's death and because he was afraid of the perpetrator. The trial court denied the motion to suppress. Two months before trial of the present case was set to begin, Artberry died.
In response to a defense motion in limine filed by respondent's new counsel, the trial court ruled that Artberry's hearing testimony would be admissible at the forthcoming trial under the hearsay exception provided by La.C.E. art. 804(B)(1) for the prior recorded testimony of an unavailable declarant. The trial court thereby rejected respondent's argument that because defense counsel had used the criteria set out in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), to focus his cross-examination of Artberry at the suppression hearing on the circumstances under which he viewed the perpetrator and then identified him in Deputy Tucker's photographic array, he had not exercised his full opportunity to question the witness because he had not delved into Artberry's "bias, interest and motive for identifying someone else as the perpetrator of the murder; to in fact take the blame or the focus or the spotlight off of himself." Respondent unsuccessfully sought review of the trial court's ruling on the motion in limine in the court of appeal and in this Court. State v. Jones, 00-1286 (La.App. 5th Cir.7/14/00); State v. Jones, 00-2155 (La.7/18/00) 766 So.2d 1261.
On the date of trial, and during its redirect examination of Deputy Tucker, the state showed defense counsel the two statements made by Artberry on the morning of the victim's death. Defense counsel immediately moved for a mistrial on grounds that the state had not disclosed either statement before the hearing on respondent's motion to suppress Artberry's identification. After conducting a hearing outside of the jury's presence, the trial court found that, in fact, the state had not disclosed the statements before the suppression hearing despite a defense discovery request and despite the claim of the prosecutrix that she had provided counsel with open file discovery. The court reversed itself with respect to the admissibility of Artberry's prior recorded testimony on grounds that the state's withholding of the statements had deprived the court, and, in view of Artberry's subsequent death, would necessarily deprive the jury, of the opportunity to determine the reliability of Artberry's identification in light of his prior conflicting statements. Because jurors had learned of Artberry's identification in the state's opening remarks, the trial court then granted the motion for a mistrial. The state sought review in the court of appeal, which upheld the trial judge's ruling on grounds that "the defense did not have an opportunity to fully and effectively cross-examine the now unavailable witness, a necessary condition for admissibility of the former testimony." State v. Jones, 00-1432 (La.App. 5th Cir.9/13/00), ___ So.2d ___. The state's application to this Court followed.
As does its federal counterpart, Fed. R.Evid. 804(b)(1), La.C.E. art. 804(B)(1) provides an exception to the hearsay rule for testimony given by an unavailable declarant as a witness in another hearing in the same case "if the party against whom the testimony now offered ... had an opportunity and similar motive to develop the *625 testimony by direct, cross, or redirect examination." The statute incorporates a firmly-rooted exception to the hearsay rule. Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); Mattox v. United States, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895); United States v. Koon, 34 F.3d 1416, 1426 (9th Cir.1994), rev'd on other grounds, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). The provisions of art. 804(B)(1) subsume jurisprudential criteria designed to protect the defendant's right to confrontation under the Sixth Amendment and La. Const. art. I, § 16. See State v. Hills, 379 So.2d 740, 743-44 (La.1980).
In the present case, before the state's disclosure of Artberry's prior statements, the trial court, court of appeal, and this Court had all rejected respondent's argument that La.C.E. art. 804(B)(1) did not apply to Artberry's testimony at the suppression hearing because defense counsel was motivated by different concerns at that proceeding than he would have been at trial. See United States v. Salerno, 505 U.S. 317, 326, 112 S.Ct. 2503, 2509, 120 L.Ed.2d 255 (1992) (Blackmun, J., concurring) ("Because `similar motive' does not mean `identical motive,' the similar motive inquiry ... is inherently a factual inquiry, depending in part on the similarity of the underlying issues and on the context of the [prior] questioning."); 2 McCormick on Evidence, § 304, p. 296 (5th ed., John W. Strong, ed. 1999) ("The requirement has become, not a mechanical one of identity or even of substantial identity of issues, but rather that the issues in the first proceedings, and hence the purpose for which the testimony was offered, must have been such as to produce an adequate motive for testing on cross-examination the credibility of the testimony.") (footnote omitted).
The subsequent revelation of Artberry's prior statements does not change our view as to the admissibility at trial of the witness's prior recorded testimony. In conducting the suppression hearing, the trial court not only allowed defense counsel the opportunity to confront and cross-examine Artberry but also permitted him to question the witness extensively as to his ability to perceive accurately and to recall the events of that evening. Under questioning by defense counsel, Artberry testified that he had seen respondent twice that night, on the first occasion "around the corner from my house." Respondent was in his car, and Artberry, who had been riding with the victim in the victim's car, approached on foot and spoke with respondent through an opened window of the vehicle for approximately 15 or 20 seconds. After respondent pulled away, Artberry reentered the car driven by the victim and the two men proceeded to Artberry's apartment. Respondent arrived shortly thereafter and parked next to the victim's car within 25 feet of Artberry's front porch. Artberry estimated that respondent stayed in his vehicle for approximately three minutes, then got out, went into his back seat, and then walked over to the victim's car, where the fatal shooting occurred several minutes later.
Artberry claimed at the hearing that he didn't wear glasses, that the lighting provided by a street lamp and a business located across the street gave him a good view of the scene, and that he had been looking directly at the perpetrator when he opened fire. As to the shooter's identity, Artberry claimed that he had "[b]een knowing him a while." Artberry also testified with regard to what he recalled of the descriptions he had given the police of the shooter and the getaway car and that it took him only a few seconds to identify respondent's picture in the second photographic array conducted by Detective Tucker on the day after the shooting. *626 Artberry acknowledged that he had ingested cocaine and wine earlier that evening but resisted any suggestion that his faculties had been impaired. In all, the court gave counsel a free hand to cross-examine Artberry according to those factors deemed relevant by Brathwaite to determining the admissibility of identification testimony at trial. Brathwaite, 432 U.S. at 114, 97 S.Ct. at 2253 ("Those [factors] including the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.").
In fact, there were substantial discrepancies between Artberry's second statement to Deputy Tucker and his testimony at the suppression hearing. For example, in his second statement, Artberry told the officer that after he spoke on the street to an African-American woman whom he could not identify and told her what the victim was looking for, she had been the one to approach the shooter in his car and to speak with him through the open window to arrange the drug transaction. Artberry also informed Tucker that he then walked home, the shooter arrived first in his car, and then the victim "pulled in like a bat out of hell."
Defense counsel may have found it useful to explore these discrepancies at the hearing. However, the state generally has no statutory discovery duty to disclose the pre-trial statements of its witness unless they are co-defendants in the case. La. C.Cr.P. art. 722. The state's duty under the Due Process Clause to disclose material exculpatory evidence protects the defendant's right to a fundamentally fair trial, United States v. Bagley, 473 U.S. 667, 678, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1985)(the Due Process Clause is violated when the prosecution's evidentiary suppression "undermines confidence in the outcome of the trial."), not the defendant's right to prepare for an evidentiary hearing which in this case occurred a full two years before trial. Kyles v. Whitley, 514 U.S. 419, 436-37, 115 S.Ct. 1555, 1557, 131 L.Ed.2d 490 (1995) ("[T]he Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense.... [The Due Process Clause] requires less of the prosecution than the ABA Standards for criminal Justice, which call generally for [timely] prosecutorial disclosures of any evidence tending to exculpate or mitigate.") (citations omitted); see Watkins v. Sowders, 449 U.S. 341, 347-49, 101 S.Ct. 654, 658-59, 66 L.Ed.2d 549 (1981)(the Due Process Clause does not require in every case "[a] judicial determination outside the presence of the jury of the admissibility of identification evidence."). The state therefore did not necessarily breach any statutory or constitutional duty owed to the defense to disclose Artberry's statements well in advance of trial to defense counsel, who was clearly prepared to conduct, and did conduct, a searching cross-examination of the witness at the suppression hearing. Cf. Cook v. State, 940 S.W.3d 623, 627-28 (Tex.Crim.App.1996)(failure of the state to disclose prior inconsistent statement of the witness who testified at the first of defendant's three trials but then died before defendant's second trial, during which the state finally disclosed the statement, precluded use of the witness's prior recorded trial testimony in any future proceeding against the defendant).
In this context, that defense counsel might have conducted a different and perhaps more effective cross-examination of Artberry if he had had the witness's prior statements has no bearing on the *627 admissibility of Artberry's prior recorded testimony as a matter of La.C.E. art. 804(B)(1). The state's failure to disclose the prior statements did not deny defense counsel the opportunity for cross-examination. United States v. Owens, 484 U.S. 554, 559, 108 S.Ct. 838, 842, 98 L.Ed.2d 951 (1988) (The Confrontation Clause of the Sixth Amendment "guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."); Koon, 34 F.3d at 1427 ("The failure of a defendant to discover potentially useful evidence at the time of the former proceeding does not constitute a lack of opportunity to cross-examine."). Nor did it detract from the effectiveness of the cross-examination that defense counsel did conduct with the witness. Although he could not know it at the time, defense counsel's questioning of the witnesses at the hearing had uncovered the gist of Artberry's second undisclosed statement. Deputy Tucker had preceded Artberry on the stand and testified that during his investigation, and before he conducted the second photographic array, Artberry had informed him that the shooter was known in the area as a narcotics trafficker. Artberry's subsequent testimony about his 15 to 20 second initial encounter with the perpetrator, after which he rejoined the victim and drove to his apartment where the perpetrator arrived only a minute or two later, went into his back seat, and then approached the victim, suggested unmistakably that a meeting on the scene had been arranged between the victim and the shooter and that Artberry had brokered it to facilitate a drug transaction.
Given the latitude allowed by the trial judge at the hearing, it appears that counsel's failure to pursue this line of cross-examination to its logical conclusion with Artberry stemmed as much from a tactical decision by counsel as to the scope of his questioning of the witness as it did from the state's failure to produce Artberry's prior statements. Moreover, defense counsel's inability to confront Artberry with regard to the discrepancies in his account of that night, including his initial exculpatory disclaimer to Deputy Tucker that he could not identify the perpetrator, ultimately had no bearing on the trial court's denial of the motion to suppress. In the absence of any testimony from Deputy Tucker or Artberry indicating that the photographic arrays had been composed or conducted in an unduly suggestive manner, the trial court had no basis for excluding Artberry's identification at trial. See Brathwaite, 432 U.S. at 99, 97 S.Ct. at 2245 ("This case presents the issue as to whether the Due Process Clause of the Fourteenth Amendment compels the exclusion, in a state criminal trial, apart from any consideration of reliability, of pretrial identification evidence obtained by a police procedure that was both suggestive and unnecessary."); United States v. Sleet, 54 F.3d 303, 309 (7th Cir.1995)("If a defendant fails to show that a photo display was unnecessarily suggestive ... we need not consider whether the identification was otherwise reliable.").
In Roberts, the Supreme Court found that it had no need to consider whether "the mere opportunity to cross-examine rendered the prior testimony admissible," nor whether "de minimis questioning is sufficient," because defense counsel had "tested [the witness's] testimony with the equivalent of significant cross-examination." Roberts, 448 U.S. at 70, 100 S.Ct. at 2541. For the same reason, and because counsel had a testimonial basis for delving even deeper into the circumstances surrounding the witness's observation of the shooting if he had so chosen, we find that despite the subsequent revelation of Artberry's *628 statements, the trial court ruled properly when it decided as an initial matter that Artberry's prior recorded testimony would be admissible at trial under La. C.Cr.P. art. 804(B)(1).
We note in this regard that La.C.E. art. 806 provides an important safeguard for the use of prior recorded testimony of an unavailable declarant in cases in which counsel, either because he was unaware of the information or because he chose not to pursue certain lines of cross-examination at the prior hearing, failed to delve into evidence that might have a bearing on the factfinder's determination of guilt or innocence at trial. The article provides that "[w]hen a hearsay statement ... has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness." See, e.g., Carver v. United States, 164 U.S. 694, 698, 17 S.Ct. 228, 230, 41 L.Ed. 602 (1897) ("In nearly all the cases in which the question has arisen, evidence of other statements by the deceased inconsistent with his dying declarations has been received."); State v. Henderson, 362 So.2d 1358, 1363 (La.1978)("[S]ince the dying declaration is in effect a testimonial statement .... impeachment by bad testimonial character is allowable, or by conviction of a crime, or by prior or subsequent inconsistent statements."). To facilitate introduction of the impeaching evidence, La.C.E. art. 806 further provides that "[e]vidence of a statement or conduct by the declarant at any time, offered to attack the declarant's credibility, is not subject to any requirement that he may have been afforded an opportunity to deny or explain."
At trial, the defense may therefore introduce one or both of Artberry's statements as it sees fit to acquaint jurors with all of the circumstances surrounding the witness's identification of respondent and thereby allow them to reach a reliable determination as to the accuracy of the identification. As in any other case, the defense may thereby establish salient points for closing argument that the witness's inconsistent and conflicting accounts and his motive for deflecting attention from himself because he had directly participated in the events leading to the victim's death, rendered his identification testimony unworthy of belief. See Watkins, 449 U.S. at 348, 101 S.Ct. at 658 (Because "the proper evaluation of evidence under the instructions of the trial judge is the very task our system must assume juries can perform," the fundamental safeguard against convictions based on unreliable identification testimony is cross-examination of the identification witnesses at trial and argument "in summation as to factors causing doubts as to the accuracy of the identificationincluding reference to both any suggestibility in the identification procedure and any countervailing testimony as to alibi."). Jurors will not have benefit of "`a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.'" Roberts, 448 U.S. at 63-64, 100 S.Ct. at 2538 (quoting Mattox, 156 U.S. at 242-43, 15 S.Ct. at 339). However, the loss of this aspect of the Confrontation Clause in the present case stems not from the state's withholding of Artberry's statements before the suppression hearing but from the unexpected death of the witness before respondent's first trial. Even assuming that counsel had thoroughly cross-examined Artberry at the suppression hearing about his prior statements, no jury in this *629 case would ever have had the benefit of viewing Artberry's demeanor as counsel questioned him with regard to the extent of his self-contradiction or motive and bias in the case. The state's failure to disclose Artberry's prior statements promptly therefore has no bearing on the necessity arising from the witness's untimely death that jurors must determine the reliability of Artberry's identification on the basis of the cold record of his testimony at the suppression hearing, as tested by counsel's detailed cross-examination at the time, and as tested by the defense at trial under the provisions of La.C.E. art. 806.
The trial court therefore erred in reversing itself and ruling that it would not permit introduction of Artberry's prior recorded testimony at any subsequent retrial of respondent. Accordingly, that ruling of the court is reversed, its initial judgment permitting use of Artberry's prior testimony under La.C.E. art. 804(B)(1) is reinstated, and this case is remanded for further proceedings consistent with the views expressed herein.
REVERSED AND REMANDED.
NOTES
[*] Judge J. Jay Caraway, of the Second Circuit Court of Appeal, assigned as Justice ad hoc, sitting for Chief Justice Pascal Calogero, Jr., recused; Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, sitting for Associate Justice Harry T. Lemmon; Judge Felicia Toney Williams, of the Second Circuit Court of Appeal, assigned as Justice Pro Tempore, sitting for Associate Justice Bernette J. Johnson; Retired Justice Walter F. Marcus, Jr., assigned as Justice ad hoc, sitting for Associate Justice Jeannette Theriot Knoll, recused.