**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHAEL SLOVIK,
            *Petitioner-Appellant,*

v.

JAMES A. YATES, Warden,
            *Respondent-Appellee.*

No. 06-55867

D.C. No.
CV-05-00193-BEN/
NLS

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Southern District of California
Roger T. Benitez, District Judge, Presiding

Argued and Submitted
April 9, 2008—Pasadena, California

Filed February 10, 2009

Before: William C. Canby, Jr., Andrew J. Kleinfeld, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Bybee

**COUNSEL**

Kurt David Hermansen, Law Office of Kurt David Hermansen, San Diego, California, for the petitioner-appellant.

Garrett Beaumont, Deputy Attorney General of the State of California, San Diego, California, for the respondent-appellee.

**ORDER**

The Opinion filed October 6, 2008, slip op. 14145, and appearing at 545 F.3d 1181 (9th Cir. 2008), is hereby

amended. The amended opinion is filed concurrently with this Order.

With these amendments, the panel judges have voted to deny Appellee's petition for rehearing. Judges Kleinfeld and Bybee voted to deny the petition for rehearing en banc, and Judge Canby recommended denying the petition for rehearing en banc. The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

Appellee's petition for rehearing and petition for rehearing en banc, filed October 20, 2008, are DENIED. No further petitions for rehearing or rehearing en banc will be accepted.

---

**OPINION**

BYBEE, Circuit Judge:

California prisoner Michael D. Slovik petitions for a writ of habeas corpus, contending that his confrontation rights under the Sixth and Fourteenth Amendments to the United States Constitution were violated when a California trial court prevented him from asking questions on cross-examination that would establish that one of the prosecution's key witnesses had likely lied under oath. The district court denied the petition. For the reasons explained below, we agree that Slovik was denied his confrontation rights and that the right was clearly established; accordingly, we reverse.

## I.   FACTS AND PROCEEDINGS

This case arises out of a billiard ball fight—not a billiard *hall* fight, although it certainly was that as well—but a fight involving billiard balls. On the evening of November 20, 1998, Slovik was drinking at a bar named Gusser's Carousel.

It is clear that a bar fight occurred that night, and that Slovik was one of the main belligerents in that fight. After that, the details get kind of hazy. The various witnesses and participants—as the State points out, indisputably not picked from a Sunday school choir—offered conflicting testimony.[1]

The prosecution relied largely on the eyewitness testimony of the bartender, Katherine Buckley-Stoffel, and bar patrons Mark Featherstone, Marilyn Woods, and Zachary Johnson. The defense relied on the eyewitness testimony of bar patron Bridgett Lewis. The trial error that is the subject of this appeal occurred during Featherstone's testimony. We are going to relate the story as each of the witnesses recounted it.

Buckley-Stoffel testified that at approximately 1:00 a.m. she stopped serving Slovik alcohol because he was intoxicated and antagonistic. In response, Slovik threw a tip at Buckley-Stoffel, yelled obscenities, and threatened to kill her as he was escorted outside. After Slovik was removed from the bar, Buckley-Stoffel attempted to shut and lock the door, but Slovik grabbed it, pushed her back inside, and then shoved her and punched her in the shoulder. She testified that Slovik grabbed pool balls[2] and threw one toward Lewis and

---

[1] Our recitation of the facts is drawn from the findings of fact in the opinion of the California Court of Appeal, whose findings are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Neither Slovik nor the State has challenged these findings.

[2] At oral argument, counsel for both sides indicated that cue balls were thrown. We are fairly confident that not everyone was throwing cue balls, although the record doesn't reveal whether one side was stripes and the other solids. Given that there seems to have been only one pool table at the bar, there would only have been a single cue ball. Therefore, if Slovik threw multiple balls they must have been pool balls and not cue balls. In addition to the difference in color (the cue ball is, of course, white), on coin-operated tables the owners use slightly larger and heavier cue balls, or occasionally magnetic cue balls in order to ensure that the cue ball is returned to the game after a scratch. *See* EWA MATAYA LAURANCE & THOMAS C. SHAW, THE COMPLETE IDIOT'S GUIDE TO POOL & BILLIARDS 90 (1998).

one toward her, which came within six inches of her head and broke the Plexiglas wall covering behind her. Buckley-Stoffel saw Slovik on the floor with Featherstone standing over him and then saw Slovik chasing Featherstone.

Featherstone testified that Buckley-Stoffel took Slovik's drink after Slovik did backflips through the bar. According to Featherstone, when Buckley-Stoffel asked Slovik to leave, Slovik yelled, cursed and shoved her. Buckley-Stoffel screamed for Featherstone to call 911. Featherstone further testified that as he attempted to shut the door, Slovik grabbed it and reentered the bar, shoving both Featherstone and Buckley-Stoffel against the wall. Slovik chased Lewis, and then slipped on pool sticks he had knocked down earlier. Featherstone denied touching Slovik, but claimed that Slovik chased him around the pool table, and threw two pool balls at his face. When Featherstone ducked, the balls hit the wall, and Slovik then threw a third ball.

The incident that is the basis for Slovik's habeas petition occurred during Featherstone's cross-examination. Featherstone was asked whether he was currently on probation. He answered "no." Slovik's counsel apparently had a form establishing that Featherstone had been placed on five-years' probation for driving under the influence of alcohol, and he wished to impeach Featherstone with this evidence. After an unreported side-bar discussion, the trial court apparently sustained a prosecution objection under California Evidence Code § 352 to any further questioning of Featherstone about his probationary status, ruling the inquiry would be too time consuming. Although, due to the unrecorded side-bar, the written record is ambiguous as to what exactly Slovik's counsel was attempting to introduce, at oral argument the State conceded that Slovik's counsel was not permitted to show Featherstone the document and ask him an "isn't it true that" question.

Woods testified that Johnson jumped on Slovik and they began scuffling. Woods also testified that after Johnson and

Slovik scuffled, others unsuccessfully tried to remove Slovik from the bar. Featherstone called 911 and Johnson ran out the back door. Woods confirmed that Slovik shoved Buckley-Stoffel and hit Buckley-Stoffel's arm. She testified that while Featherstone was on the other side of the pool table egging him on, Slovik grabbed two pool balls and threw one of them.

Johnson testified that he went to assist in the effort to remove Slovik from the bar. According to Johnson, Slovik swung at Buckley-Stoffel and missed, and when Johnson stepped in the way, Slovik swung at him instead, and they began fighting. Johnson hit Slovik twice in the back of the head and they fell.

The defense relied principally on the testimony of Lewis, another customer at the bar that night. According to Lewis, Slovik was intoxicated and belligerent and refused to leave until Buckley-Stoffel accompanied him to the door. When Lewis heard a disturbance, she went outside and witnessed Johnson holding Slovik in a chokehold against a car, as Johnson's sister screamed to "let him go!" Lewis testified that Slovik followed Johnson back into the bar, and when Lewis and Buckley-Stoffel attempted to shut the door, Slovik pushed Buckley-Stoffel aside and entered the bar. Lewis then kicked Slovik; he threatened her, and she ran outside. Lewis witnessed Featherstone pushing Slovik, and then kicking and pushing him back down when he tried to get up. Lewis testified that after Slovik got up he angrily threw pool balls in an erratic fashion "not to pinpoint anybody out. He was just throwing them to throw them." On cross-examination Lewis testified that she was unsure what he was trying to hit: "I guess people. I don't know how." She further testified that as Slovik moved toward the door, Featherstone threw a ball in that direction.[3]

---

[3]Lewis testified that when the police asked them to write statements, they discussed the events among themselves, and Featherstone indicated that they should not mention that he had pushed or kicked Slovik.

As a result of the bar fight, Slovik was charged with assault with a deadly weapon (the pool balls) and by means of force likely to produce great bodily injury upon Buckley-Stoffel (count one), and upon Featherstone (count two) in violation of California Penal Code § 245(a)(1); and battery upon Featherstone (count three) and Buckley-Stoffel (count four) in violation of California Penal Code § 242. A jury found Slovik guilty of counts two and four as charged, guilty of the lesser included offense of simple assault for count one, and not guilty of count three. On June 28, 1999, the trial court sentenced Slovik to 40 years to life as a result of the California three-strikes law and other sentencing enhancements.

Slovik appealed his conviction on numerous grounds. The California Court of Appeal affirmed Slovik's conviction on the merits, but struck some of the sentencing enhancements in an unpublished decision. The California Supreme Court denied Slovik's petition for review. In September 2001, Slovik was resentenced to 35 years to life, which the California Court of Appeal affirmed in another unpublished decision. Slovik then filed a state habeas corpus petition, which was denied by the Superior Court, the state appellate court, and the California Supreme Court.

In February 2005, Slovik filed a 28 U.S.C. § 2254 petition for writ of habeas corpus in federal district court. Magistrate

Although she wrote that Slovik *hit* Buckley-Stoffel, she testified that she meant that he *pushed* Buckley-Stoffel when being escorted out of the bar. She explained that she did not mention the parking lot fight in her statement because the police told them to write about the incident in the bar. Lewis also failed to note in her written statement that Featherstone had thrown a pool ball, but she testified that she decided to tell the truth when she learned that Slovik would receive a long sentence.

A defense investigator testified that when he interviewed Lewis she never mentioned anyone besides Slovik throwing pool balls, but she did state that Featherstone pushed Slovik to the ground and then kicked him, and that Buckley-Stoffel and Featherstone did not plan to inform the police about either that or the parking lot fight.

Judge Stiven recommended that the habeas petition be denied, and Judge Benitez adopted that recommendation and denied the petition on May 1, 2006. Slovik timely appealed.

## II.   DISCUSSION

This case is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d).[4] *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997). Under AEDPA, we may not grant Slovik habeas relief unless the last reasoned state court adjudication, here the California Court of Appeal's first unpublished decision addressing the merits of his case, "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented

---

[4]After briefing, oral argument, and publication of an opinion in this case, the State argued for the first time in a petition for rehearing that Slovik did not sufficiently raise a Confrontation Clause argument in state court proceedings. Moreover, Slovik apparently cannot return to state court to raise a Confrontation Clause claim because he failed to raise the argument in his original state habeas petition. *See In re Clark*, 855 P.2d 729, 760 (Cal. 1993) (holding that "absent justification for the failure to present all known claims in a single, timely petition for writ of habeas corpus, successive and/or untimely petitions will be summarily denied"). Accordingly, Slovik is no longer subject to an exhaustion requirement, but he has procedurally defaulted his Confrontation Clause claim. *See Franklin v. Johnson*, 290 F.3d 1223, 1229-32 (9th Cir. 2002). We find, however, that the State has forfeited this procedural default argument, and we refuse to raise the issue sua sponte. *See id.*; *Vang v. Nevada*, 329 F.3d 1069, 1073 (9th Cir. 2003).

In similar circumstances, the court in *Franklin*, 290 F.3d at 1233, went on to review the petitioner's claim under AEDPA's deferential standard despite the fact that the issue had not been raised in state court. However, in *Chaker v. Crogan*, 428 F.3d 1215, 1221 (9th Cir. 2005), the court held that when a state has forfeited a procedural default argument we review the claim de novo. We need not resolve any tension between these cases, because we conclude that under either standard, a writ of habeas must be issued.

in the State court proceeding." 28 U.S.C. § 2254(d). We review de novo a district court's decision to deny a habeas petition. *Campbell v. Rice*, 408 F.3d 1166, 1169 (9th Cir. 2005) (en banc).

We granted a certificate of appealability on two questions: (1) whether Slovik's constitutional rights were violated by the trial court's exclusion of evidence that would have impeached Featherstone; and (2) whether Slovik's right to present a defense was violated by the assault instruction given to the jury. Because we find the limitation on use of impeachment evidence for cross-examination adequate to grant the petition, we do not reach the jury instruction issue.

## A. *Confrontation Clause Violation*

**[1]** The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Supreme Court has explained that the right of confrontation "means more than being allowed to confront the witness physically," but rather "[t]he main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.*" *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) (internal quotation marks and citation omitted). The Confrontation Clause does not prevent a trial judge from imposing "reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Nevertheless, the Court has held that a defendant's Confrontation Clause rights have been violated when he is "prohibited from engaging in otherwise appropriate cross-examination . . . and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.' " *Id.* at 680 (quoting *Davis*, 415 U.S. at 318). "[A] criminal defendant states a violation of the Confrontation

Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." *Id.* Accordingly, the defendant has met his burden when he has shown that "[a] reasonable jury might have received a significantly different impression of [a witness'] credibility had . . . counsel been permitted to pursue his proposed line of cross-examination." *Id.*

**[2]** Slovik's Sixth Amendment right to be confronted with the witnesses against him was violated because a reasonable jury might have received a "significantly different impression" of Featherstone's credibility had Slovik been permitted to confront Featherstone with the record of probation and cross-examine him concerning his apparent lie under oath. *See id.* During his cross-examination of Featherstone, Slovik's counsel asked "You're currently on probation right now?" to which Featherstone responded "No." When, during cross-examination, Slovik's counsel attempted to approach Featherstone with evidence that Featherstone was in fact on probation, the trial court denied permission to approach the witness with that evidence. Had Slovik's counsel been permitted to ask Featherstone something along the lines of "isn't it true that you are currently on probation for driving under the influence of alcohol?" Slovik might have shown that Featherstone's prior statement, made under oath, that he was not on probation was a lie.[5]

**[3]** The evidence that Featherstone was placed on five-years' probation for driving under the influence was not being proffered to establish that Featherstone was unreliable simply because he was on probation, but rather to establish that Fea-

---

[5]At oral argument the State suggested that Featherstone was not necessarily lying because he may not have known that he was on probation. We find it extremely improbable that a person is unaware that he is on probation. In any event, that argument should have been left to counsel and resolved by the jury.

therstone was unreliable because he had lied about being on probation and to establish that he had an ulterior motive to place the blame on Slovik so as not to admit to violating the terms of his probation.[6] It is clear to us that the jurors might have formed a significantly different impression of Featherstone's credibility if they had heard cross-examination showing that Featherstone was willing to lie under oath and that he had a motive for lying because of the terms of his probation status. Therefore, the trial court's refusal to allow Slovik to present such evidence violated Slovik's constitutional rights under the Sixth Amendment, so clearly set forth in *Van Arsdall* and *Davis*.

The State concedes that the exclusion of the proffered impeachment cross-examination would violate Slovik's Sixth Amendment confrontation rights if the excluded testimony would have produced a significantly different impression of the witness' credibility, but it contends that exclusion of cross-examination with the record of Featherstone's probation did not significantly alter the jurors' impression of Featherstone's credibility. Inexplicably, the State argues that "[j]urors could reasonably infer from defense counsel's cross-

---

[6]Slovik argues that if Featherstone was on probation, he would have had an additional motive for lying about whether he attacked Slovik first, because an assault or battery charge would have violated the terms of his probation. The State argues that Slovik never advised the trial court, pursuant to California Evidence Code § 354(a), that he intended to pursue evidence of Featherstone's current probation status to show Featherstone had a motive for testifying falsely. California evidentiary law is irrelevant to the determination of Slovik's constitutional rights, and we find Slovik's argument sufficient to raise the issue to the state trial court. The record clearly indicates that Slovik argued that he should have had the opportunity to question Featherstone regarding his probationary status under *Davis v. Alaska*, 415 U.S. 308 (1974). *Davis* involved the right to confront a witness based on his motive to lie due to his probationary status. *Id.* at 319. Insofar as the State now wishes to assert that Slovik is procedurally barred by failing to raise this issue in the state courts of appeal, we find that the State has forfeited the argument by failing to raise it prior to the filing of its petition for rehearing. *See Franklin*, 290 F.3d at 1229-32.

examination question and Featherstone's answer that Feather-
stone committed an offense resulting in a prior placement on
probation." The entire exchange proceeded as follows:
Slovik's counsel asked Featherstone, "You're currently on
probation right now?" to which Featherstone responded "No."
It is baffling how jurors could reasonably infer from this
exchange that Featherstone committed an offense resulting in
a prior placement on probation. The only conclusion that a
juror could reasonably draw is that Slovik's counsel was
attempting to impeach Featherstone's credibility, but failed.
Indeed, because use of the evidence was prohibited, it would
have been improper for the jurors to read anything else into
the exchange. The State has not offered any reason why the
jury would suspect that Featherstone was lying when he
answered "No." The jurors were left to assume that Slovik's
counsel was fishing and that Featherstone testified honestly.

The State also contends that the trial court's ruling did not
significantly alter the jury's impression of Featherstone's
credibility because Slovik's trial counsel had already estab-
lished that some of the prosecution's witnesses were regular
bar patrons, and some were on probation, and that this "suf-
ficed to dispel any lingering illusions that the prosecutor
picked his witnesses from a Sunday school choir." This argu-
ment fails to recognize the effect that cross-examination
might have had on the jurors' perception of the individual wit-
ness. Although we will consider this argument again in our
harmless error analysis, the fact that defense counsel
impeached other witnesses bears no relevance in the confron-
tation right analysis, which asks whether impeaching Feather-
stone would have produced a significantly different
impression of Featherstone's credibility. Featherstone was an
important witness. He was in the middle of the dust-up and,
if his testimony was believed, was a victim of Slovik's
billiard-ball assault. The Supreme Court has emphasized that
"the focus of the Confrontation Clause is on individual wit-
nesses" and thus "the focus of the prejudice inquiry in deter-
mining whether the confrontation right has been violated must

be on the particular witness, not on the outcome of the entire trial." *Van Arsdall*, 475 U.S. at 680. That defense counsel was able to impeach other witnesses is irrelevant to whether the trial court's limit on Slovik's ability to cross-examine Featherstone violated the Confrontation Clause.

**[4]** The California Court of Appeal analyzed Slovik's claim as an evidentiary issue governed by state law, rather than a confrontation question governed by the Sixth Amendment. The California Court of Appeal approved the trial court's ruling under California Evidence Code § 352, which states:

> The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.

Applying a California evidentiary standard of review, the Court of Appeal concluded that "[a]bsent a clear showing of abuse, the trial court's exercise of discretion under this section will not be reversed." *See People v. Avila*, 133 P.3d 1076, 1137 (Cal. 2006) ("We review for abuse of discretion a trial court's rulings on relevance and the exclusion of evidence under Evidence Code section 352."). AEDPA gives us no basis here for questioning a California court's decision applying its own evidentiary rules. However, had the Court of Appeal applied *Van Arsdall* and *Davis*, we believe it would have come to a different conclusion. In this regard, the California Court of Appeal's decision was objectively unreasonable in light of clearly established Supreme Court precedent regarding the Confrontation Clause.

B. *Harmless Error Analysis*

**[5]** Confrontation Clause errors are subject to harmless-error analysis. Normally, for constitutional errors "[t]he cor-

rect inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Van Arsdall*, 475 U.S. at 684. However, in reviewing state court decisions for harmless error in the context of a habeas petition, federal courts review to determine if the error had "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see Fry v. Pliler*, 127 S. Ct. 2321, 2325-27 (2007). "If a habeas court is left with 'grave doubt' about whether a constitutional error substantially influenced the verdict, then the error was not harmless." *Parle v. Runnels*, 387 F.3d 1030, 1044 (9th Cir. 2004). In making this inquiry, the court must review the record to determine "what effect the error had or reasonably may be taken to have had upon the jury's decision." *McKinney v. Rees*, 993 F.2d 1378, 1385-86 (9th Cir. 1993) (quoting *Kotteakos*, 328 U.S. at 764). In any particular case the relevant factors include "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Id.*

Applying these factors, we conclude that the trial court's limit on Slovik's ability to cross-examine Featherstone had a substantial and injurious effect or influence in determining the jury's verdict. Assuming, as we must, that the damaging potential of Featherstone's cross-examination was fully realized, *Fowler v. Sacramento County Sheriff's Dep't*, 421 F.3d 1027, 1041 (9th Cir. 2005), we are left with a grave doubt as to whether the trial error had a substantial influence on the jury's decision.

[6] The conviction at issue in Slovik's habeas petition is count two, assault with a deadly weapon, for throwing pool

balls at Featherstone. Featherstone's testimony is critical to that conviction because Featherstone testified plainly that Slovik threw one or more pool balls at him. The only other witness who testified that Slovik may have thrown a pool ball at Featherstone is Woods. According to the California Court of Appeal, Woods testified that "while Featherstone was on the other side of the pool table egging him on, [Slovik] threw one of the balls." Given that Slovik's defense was based on self-defense, and he argued that Featherstone was the aggressor, a reasonable jury would have had a much more difficult decision on a charged count of assault with a deadly weapon based solely on Woods' testimony—that Slovik "threw one of the balls" while Featherstone was egging him on. Woods' testimony did not even indicate that Slovik was aiming at Featherstone, as opposed to just throwing a ball aimlessly. Moreover, Woods only testified that Slovik threw one ball and does not indicate the target of that ball, whereas Featherstone contended that Slovik threw three balls at him. Other witnesses testified either that Slovik threw pool balls haphazardly, or that he threw them at others. Lewis, for example, testified that Slovik "was just throwing [pool balls] to throw them" and was not trying "to pinpoint anybody." Featherstone's testimony thus appears crucial to the prosecution's case and is not cumulative. We gravely doubt whether the prosecution's case was so strong that the trial court's decision to exclude cross-examination on evidence discrediting Featherstone did not have a substantial and injurious impact on the jury's decision.

The State does not attempt to argue that its case was particularly strong, or that Featherstone was inconsequential to its conviction. Rather, the State alleges that even if the state court committed constitutional error, "the state court trial jurors knew that none of the trial witnesses led a purely law-abiding life." We are not sure what we should take from this admission. This argument is presumably an attempt to show that the testimony was cumulative, but it merely serves to emphasize that the State's case rested on the testimony of shaky wit-

nesses and reminds us that if these witnesses were further contradicted, the jury might not have returned a conviction.

The California Court of Appeal found "harmless error in the court's excluding evidence a witness was on probation when the witness testified to the contrary." *People v. Slovik*, No. SCE193584, at 2 (Cal. Ct. App. filed Mar. 2, 2001). The court provided no reasoning to support that statement. The court's analysis is limited to another conclusory statement that "there is no reasonable probability of a different result had the court allowed questioning of Featherstone's probationary status." *Id.* at 13. The court fails to explain why there is no reasonable probability of a different result, in light of any of the factors provided by the Supreme Court to guide the harmless error inquiry. Instead, the court just concludes for a third time that "[t]he fact [that] the defense was not allowed to question Featherstone further about whether he was on probation did not result in a miscarriage of justice." *Id.*

**[7]** We review a state court decision regarding harmless error to determine if it "is contrary to Supreme Court precedent or objectively unreasonable." *Inthavong v. Lamarque*, 420 F.3d 1055, 1059 (9th Cir. 2005).[7] Although it is unclear whether the California Court of Appeal simply failed to conduct a harmless error analysis, or whether it misapplied that analysis, its conclusion that the trial court's exclusion of the evidence of Featherstone's probation was harmless error either contradicted or unreasonably applied established fed-

---

[7]Here, because Slovik failed to directly raise the Confrontation Clause issue, the California Court of Appeal appears to have applied the state harmless error standard under *People v. Watson*, 299 P.2d 243, 253-55 (Cal. 1956), rather than the constitutional harmless error standard under *Chapman v. California*, 386 U.S. 18, 24 (1967). As noted above, we find that the State has forfeited any procedural default argument on this issue by failing to bring it to the attention of the court prior to filing a petition for rehearing. Under either de novo review, *see Chaker*, 428 F.3d at 1221, or the more deferential standard under AEDPA, *see Franklin*, 290 F.3d at 1233, we conclude that the writ of habeas must be issued.

eral law as determined by Supreme Court precedent. *See Van Arsdall*, 475 U.S. at 684.

### III. CONCLUSION

**[8]** We reverse the denial of the petition, and direct the district court to issue an order stating that a writ of habeas corpus will be issued with regard to Slovik's assault conviction unless he is retried or resentenced within a reasonable period of time to be determined by the district court.

**REVERSED AND REMANDED**.