CALLAHAN, Circuit Judge,
dissenting:
Tuite is entitled to habeas relief only if the error had a substantial, injurious effect on the verdict. Slovik v. Yates, 556 F.3d 747, 755 (9th Cir.2009). Because the excluded cross-examination would likely have discredited both the prosecution’s and defense’s experts, and would have proven relatively unimportant in light of the other evidence at trial, I would affirm the denial of habeas relief.
In assessing the effect of the error on the verdict, we assume that the damaging potential of the cross-examination would have been fully realized. Id. As the state court described, the cross-examination would have revealed McCrary’s strong personal bias toward the prosecution and against O’Toole, his belief that Tuite was guilty, and his ability to exaggerate.
However, the potential damage cut both ways. O’Toole’s own credibility likely would have been sullied. In a cross-examination outside the jury’s presence, McCrary explained that O’Toole’s report of the crime had been “pulled” and that he had prepared the letter at someone else’s request for an ethics investigation. The jury might also have been influenced by McCrary’s assessment of Tuite’s guilt, given McCrary’s vast investigative experience.
Additionally, in assessing the error’s effect we consider (1) the testimony’s importance; (2) whether it was cumulative; (3) whether there was evidence that corroborated or contradicted the testimony’s material points; (4) the extent of cross-examination allowed; and (5) the full strength of the prosecution’s case. Id.
1. The dueling testimony was relatively unimportant to both sides, in light of the other evidence. As Tuite conceded, the DNA evidence was the strongest aspect of the prosecution’s ease. The prosecution only used McCrary to rebut O’Toole’s testimony concerning whether the crime was organized.
The defense’s case was directed toward establishing that the original suspects killed Stephanie. Most important to the defense’s case were the video and audiotapes of the suspects’ inculpating statements during their interrogations by the police.
In addition to O’Toole’s testimony, the defense put on an expert who testified that the nature of the attack suggested more than one attacker. Moreover, the defense put on an expert who testified that after 600 hours of investigation, he had found nothing placing Tuite inside the house.
2. Although McCrary’s testimony was not cumulative of other testimony in favor of the prosecution, this factor is outweighed by the other factors that all suggest the error did not substantially affect the verdict.
3. The jury could assess for itself whether the extensive crime scene evidence corroborated McCrary’s or O’Toole’s analysis.
*709 4. Although the defense was prevented from fully exploring McCrary’s bias based on the letter, it was able to establish McCrary’s general bias for the prosecution as a paid witness. Further, defense counsel skillfully challenged McCrary’s interpretation of various crime scene factors and his final assessment that the crime scene was disorganized.
5. Despite the improbabilities of the commission of the crime, the prosecution had a workable theory on how it was done, and showed that Tuite was bold and irrational in his hunt for a girl on the night of the murder. Tuite had approached several homes looking for a “girl,” who he later declared he wanted to “kill.” Tuite had opened the front door of one of the homes. He was last seen that night heading up the road leading to Stephanie’s house, which was the only home on that part of the road. The prosecution showed that he could have entered through the laundry room door and left through one of two different doors.[1] Further, although family members heard pounding in the house around the time of the murder, and Stephanie’s mother woke up and realized that her bedroom door was opened and shut, none of the family members investigated the noises.
The jury was also presented with evidence placing Tuite in the house. Stephanie’s DNA was found on the shirt Tuite wore that night. Investigators found a wrapper from an uncommon cough drop and a torn Snickers bar wrapper in Tuite’s pockets, and found wrappers from the same cough drops and a torn Snickers wrapper in Stephanie’s room. Moreover, although the investigators did not find a knife on Tuite when he was detained the day after the murder, the jury received evidence that Tuite was found with a knife on three prior occasions.
The DNA evidence was the strongest aspect of the prosecution’s case, although it was disputed. During its lengthy deliberations, the jury requested read backs of DNA testimony, but not the testimony at issue.
In light of these considerations, I am convinced that the limitation on cross-examination did not have a substantial and injurious effect on the jury’s verdict. Thus, I would affirm the denial of habeas relief.

. Tuite’s ability to slip through the unfamiliar house seems less improbable in light of his wily escape from handcuffs and the courtroom holding tank during trial, which ended with his apprehension hours later in another town.