**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JAIME AYALA GALVEZ, | No.    18-56303 |
| Petitioner-Appellant, | D.C. No.<br>2:16-cv-07626-AG-GJS |
| v. | |
| WILLIAM MUNIZ, Warden, | MEMORANDUM* |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the Central District of California
Andrew J. Guilford, District Judge, Presiding

Argued and Submitted November 16, 2020
Pasadena, California

Before:  RAWLINSON and HUNSAKER, Circuit Judges, and ENGLAND,**
District Judge.
Concurrence by Judge HUNSAKER.

---

\*        This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*        The Honorable Morrison C. England, Jr., United States District Judge
for the Eastern District of California, sitting by designation.

Petitioner–Appellant Jaime Ayala Galvez (Galvez) challenges the district court's denial of his petition for habeas relief pursuant to 28 U.S.C. § 2254.[1]

Under the Antiterrorism and Effective Death Penalty Relief Act of 1996, habeas relief is available only if the state court decision being reviewed was contrary to or an unreasonable application of Supreme Court precedent. *See Murray v. Schriro*, 882 F.3d 778, 801 (9th Cir. 2018). Reviewing *de novo*, we affirm. *See id.*

The California Court of Appeal assumed without deciding, that requiring Galvez to testify before the prosecution completed the presentation of its case violated various constitutional rights. The state court nevertheless concluded that any error was harmless, as Galvez was unable to establish prejudice.

Galvez contends that the error here is structural error, and was not subject to harmless error review. However, the United States Supreme Court has not ruled that this type of trial error is structural in nature. *See Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) ("[T]his Court has held on numerous occasions that it is not an unreasonable application of clearly established Federal law for a state court to

---

[1] We decline to expand the certificate of appealability to include the uncertified ineffective assistance of counsel claim because Galvez failed to "make a substantial showing of the denial of a constitutional right." *Hiivala v. Wood*, 195 F.3d 1098, 1104 (9th Cir. 1999) (citation and internal quotation marks omitted).

decline to apply a specific legal rule that has not been squarely established by this Court. . . .") (citations and internal quotation marks omitted).

Galvez argues in the alternative that the California Court of Appeal's harmlessness determination was erroneous because Galvez was prejudiced by being forced to testify before completion of the government's case. We disagree. The state court's rejection of Galvez's prejudice argument was not objectively unreasonable in light of the overwhelming evidence of guilt. *See Allen v. Woodford*, 395 F.3d 979, 992 (9th Cir. 2005), *as amended* ("[T]o the extent that any claim of error . . . might be meritorious, we would reject that error as harmless because the evidence of [the petitioner's] guilt is overwhelming.").

Finally, there is no clearly established federal law holding that the United States Constitution bars a trial court from directing a verdict of sanity when a defendant has not offered substantial evidence of insanity. *See Kahler v. Kansas*, 140 S. Ct. 1021, 1029 (2020) (reiterating that "[t]he takeaway [is] clear: [a] State's insanity rule is substantially open to state choice") (citation, alteration, and internal quotation marks omitted). In addition, California Penal Code § 29.8 barred

application of the insanity defense based on the use of drugs.[2]  Therefore, the state court did not unreasonably apply Federal law in affirming the directed verdict of sanity against Galvez.  *See White v. Woodall*, 572 U.S. 415, 426 (2014) (discussing unreasonable application of Supreme Court precedent).[3]

**AFFIRMED.**

---

[2] "In any criminal proceeding in which a plea of not guilty by reason of insanity is entered, this defense shall not be found by the trier of fact solely on the basis of a personality or adjustment disorder, a seizure disorder, or an addiction to, or abuse of, intoxicating substances."  California Penal Code § 29.8.

[3] Contrary to Galvez's contention, the expert witness did not testify that he was insane.

*Galvez v. Muniz*, 18-56303
HUNSAKER, J., concurring:

I concur in the court's decision because the Supreme Court has not held it is structural error to require a criminal defendant to either testify or lose his right to testify before the prosecution has completed its case. *See Williams v. Taylor*, 529 U.S. 362, 381 (2000) ("If t[he Supreme] Court has not broken sufficient legal ground to establish an asked-for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar."). I write separately, however, to address the seriousness of the state court's seemingly cavalier error.

Petitioner Jaime Galvez was indicted on multiple California firearms charges. At trial, one of the prosecution's witnesses finished testifying well before its next witness was available. To fill the one hour and fifteen minutes remaining before the noon break, the trial court asked if a *defense* witness was available to fill the time. Defense counsel replied that the only defense witness present was Galvez. The trial court inquired whether Galvez had "definitely decided to offer testimony." When defense counsel answered in the affirmative, the trial court indicated that Galvez should take the stand. Defense counsel did not object, and the trial court questioned Galvez to ensure he understood and wanted to waive his right to remain silent.

During this colloquy, Galvez explained that he wanted to testify "but not now." The trial court stated that all it needed to hear was that Galvez planned to

1

testify. It then explained, "I'm going to give you a few minutes to discuss this with your lawyer because I get the impression from you that you're somewhat equivocal in [waiving] your right to remain silent, that you feel should be conditional in some respect, and that is not the case." After Galvez conferred with his counsel, the trial court again asked whether he wanted to testify. Defense counsel responded that "[t]he defense wishes to proceed by having [Galvez] testify" but that Galvez was still "concerned about testifying now. He prefers to testify at the close of the case . . . ."

> The trial court rebuffed Galvez's objection, stating:
>
> [A]gain . . . you can't put conditions on your testimony. Either you want to testify or you don't. And we have available time this morning, so if you wish to testify, now is your time. If not, then you certainly can exercise your right to remain silent and not testify, but I will not allow you to put conditions on your availability to testify.

The trial court asked a final time: "So, [Galvez], is it your desire to testify, yes or no?" Galvez responded that he wanted to testify, and he took the stand before the prosecution rested its case. Ultimately, Galvez was found guilty.[1]

As the majority notes, it is uncontroversial that the state court erred—the state appellate courts assumed error. At issue here is a criminal defendant's right to "remain inactive and secure, until the prosecution has taken up its burden and

---

[1] The relevant factual summary is largely drawn from the California Court of Appeal's factual summary, which is presumed to be correct. *See, e.g.*, *Slovik v. Yates*, 556 F.3d 747, 749 n.1 (9th Cir. 2009).

2

produced evidence and effected persuasion." *Taylor v. Kentucky*, 436 U.S. 478, 483 n.12 (1978) (quoting 9 John Henry Wigmore, Evidence § 2511 (3d ed. 1940)). Embedded in the Due Process Clause, this right—often referred to inaccurately as the presumption of innocence[2]—"is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Id.* at 483 (quoting *Coffin v. United States*, 156 U.S. 432, 453 (1895)).

---

[2] The Supreme Court previously "held that the presumption of innocence and the equally fundamental principle that the prosecution carries the burden of proof beyond a reasonable doubt were logically separate and distinct." *Taylor*, 436 U.S. at 483 (citing *Coffin v. United States*, 156 U.S. 432, 453 (1895)). It has since changed that view. *Id.* at 483 n.12 ("It is now generally recognized that the 'presumption of innocence' is an inaccurate, shorthand description of the right of the accused to 'remain inactive and secure, until the prosecution has taken up its burden and produced evidence and effected persuasion; i.e., to say in this case, as in any other, that the opponent of a claim or charge is presumed not to be guilty is to say in another form that the proponent of the claim or charge must evidence it.'") (citation omitted). The right to remain inactive and secure often is implicated when a trial court fails to instruct the jury on the presumption of innocence, *see, e.g.*, *id.* at 485–86, which—depending on the particular facts of the case—can violate the Due Process Clause. *See id.* at 490; *see also Kentucky v. Whorton*, 441 U.S. 786, 789 (1979) ("In short, the failure to give a requested instruction on the presumption of innocence does not in and of itself violate the Constitution."). But there is a difference between instructing the jury on the presumption of innocence and preserving this "axiomatic" right throughout the trial proceedings (i.e., ensuring that the defendant is allowed to remain inactive and secure until the prosecution completes its case and presents sufficient evidence to meet its burden). *See Herrera v. Collins*, 506 U.S. 390, 399 (1993) ("Once a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears."); *Delo v. Lashley*, 507 U.S. 272, 278 (1993) (per curiam) ("Once the defendant has been convicted fairly in the guilt phase of the trial, the presumption of innocence disappears."); *Betterman v. Montana*, 136 S. Ct. 1609, 1618 (explaining a conviction "terminates the presumption of innocence").

3

The origin of this right extends well beyond our constitutional founding. *See Coffin*, 156 U.S. at 454–56 (discussing ancient sources). One early American legal scholar explained:

> The operation and exact scope of [the presumption of innocence], both in civil and criminal cases, was very neatly expressed by the General Court (the Legislature) of Massachusetts so long ago as 1657, as follows: "Whereas, in all civil cases depending in suit, the plaintiff affirmeth that the defendant hath done him wrong and accordingly presents his case for judgment and satisfaction—it behoveth the court and jury to see that the affirmation be proved by sufficient evidence, else the case must be found for the defendant; and so it is also in a criminal case, for, in the eye of the law every man is honest and innocent, unless it be proved legally to the contrary."

James Bradley Thayer, The Presumption of Innocence in Criminal Cases, 6 Yale L.J. 185, 189 (1897). By ensuring that the defendant remains inactive and secure until *after* the prosecution rests its case, we "not only strengthen[] th[e] safeguard against wrongful conviction, but [we also] ensure[] . . . that the government carry the central burden of the litigation." LaFave et al., Accusatorial burdens, 1 Criminal Procedure § 1.5(d) (4th ed. 2020).

In fact, if the prosecution fails to present the necessary evidence to meet the elements of the crime charged, then the defendant is entitled to a judgment of acquittal at the close of the prosecution's case. *See* Fed. R. Crim. P. 29. Thus, only if the prosecution carries its initial burden of proof must the defendant consider

4

whether to present any evidence—let alone whether to testify.[3] And the decision whether to testify is a weighty one. As the Supreme Court has recognized, "[w]hether the defendant is to testify is an important tactical decision as well as a matter of constitutional right." *Brooks v. Tennessee*, 406 U.S. 605, 612 (1972).

> [A] defendant's choice to take the stand carries with it serious risks of impeachment and cross-examination; it may open the door to otherwise inadmissible evidence which is damaging to his case, including, now, the use of some confessions for impeachment purposes that would be excluded from the State's case in chief because of constitutional defects. Although it is not thought inconsistent with the enlightened administration of criminal justice to require the defendant to weigh such pros and cons in deciding whether to testify, none would deny that the choice itself may pose serious dangers to the success of an accused's defense.

*Id.* at 609 (internal quotation marks and citations omitted). Considering the nature of this decision, a defendant must be given the *opportunity* to "meticulously balance the advantages and disadvantages of . . . becoming a witness in his own behalf." *Id.*

---

[3] By requiring a defendant to testify during the prosecution's case in chief (or not at all), a trial court also undermines other constitutional rights. Specifically, the privilege against self-incrimination. However, the history does not address the temporal aspect of whether a defendant can be required to testify *before* the prosecution rests its case because "at the time of framing of the Fifth Amendment and for many years thereafter the accused in criminal cases was not allowed to testify in his own behalf" at all. *McGautha v. California*, 402 U.S. 183, 214 (1972). Nonetheless, the purpose underlying the privilege is undoubtedly implicated. *See Couch v. United States*, 409 U.S. 322, 327 (1973) ("Historically, the privilege sprang from an abhorrence of governmental assault against the single individual accused of crime and the temptation on the part of the State to resort to the expedient of compelling incriminating evidence from one's own mouth."); *see also Miranda v. Arizona*, 384 U.S. 436, 460 (1966) (explaining the rationales underlying the privilege).

at 608 (quoting *United States v. Shipp*, 359 F.2d 185, 190 (6th Cir. 1966) (McAllister, J., dissenting)). A defendant is deprived of this opportunity when he is forced to decide whether to testify before the prosecution has completed its case.

The state argues that the trial court properly exercised its discretion in managing trial proceedings. That trial judges have broad power to control the proceedings before them, including the order of proof, cannot reasonably be questioned. *See id.* at 613 ("[N]othing we say here otherwise curtails in any way the ordinary power of a trial judge to set the order of proof."). But that power is not limitless; it must be exercised within the bounds of the law. *See generally United States v. Goode*, 814 F.2d 1353, 1355 (9th Cir. 1987) (explaining that trial courts have "broad discretion in determining the conduct and order of the [criminal] trial" but that such discretion is limited "when a party's rights are somehow prejudiced") (citing *Brookhart v. Janis*, 384 U.S. 1 (1966)).

Specifically, "restrictions of a defendant's right to testify may not be arbitrary or disproportionate to the purposes [such restrictions] are designed to serve." *Rock v. Arkansas*, 483 U.S. 44, 55–56 (1987). Thus, even though a trial court may require a defendant to testify or rest his case when the defendant has been inefficient in its presentation of *the defense's case*, *see, e.g.*, *Loher v. Thomas*, 825 F.3d 1103, 1117 (9th Cir. 2016), that does not mean a trial court can require a defendant to testify during the prosecution's case in chief (or not at all) to fill a gap of time *in the*

6

*prosecution's case*. Not only is the defendant not responsible for the prosecutor's inefficiency and lack of planning, but—more important—a myopic focus on efficiency in this circumstance undermines the "axiomatic and elementary" legal doctrine of our criminal justice system: a defendant's right to remain inactive and secure until the prosecution completes its case and meets its burden. *See Estelle v. Williams*, 425 U.S. 501, 503 (1976) ("To implement the presumption, courts must be alert to factors that may undermine the fairness of the fact-finding process. In the administration of criminal justice, courts must carefully guard against dilution of the principle that guilt is to be established . . . beyond a reasonable doubt."). On balance, the foundational requirement that the government independently carry its burden of proof cannot be subverted for such a trivial reason as presented here. The trial court's insistence that Galvez take the stand or lose his right to do so to fill a gap of time in the prosecution's case smacks of judicial whim, not legitimate trial management, as the state contends. *See Brooks*, 406 U.S. at 608.

However, because Galvez's case comes to us under habeas review of a state conviction, to prevail he must show not only that the trial court erred, but that the error has been clearly established as structural error by the Supreme Court. 28 U.S.C. § 2254(d); *Glebe v. Frost*, 574 U.S. 21, 23 (2014) (per curiam). I agree with the majority that Galvez cannot meet this burden.

Structural errors are those that "affect[] the framework within which the trial

7

proceeds, rather than being simply an error in the trial process itself." *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1907 (2017) (internal quotation marks and citation omitted). Such errors are found in a "very limited class of cases," *Johnson v. United States*, 520 U.S. 461, 468–69 (1997) (listing cases), and reversing decisions based on these errors serves to "ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial," *Weaver*, 137 S. Ct. at 1907. The Supreme Court has identified "three broad rationales" for deeming an error structural. *Id.* at 1908. First, structural error has been found where the right at issue is not designed to protect the accused from erroneous conviction but instead protects some other interest. *Id.* Denying a defendant the right to conduct his own defense is structural error because, although the defendant is more likely to receive an unfavorable outcome, he "must be allowed to make his own choices about the proper way to protect his own liberty." *Id.* Second, structural error has been found where the effects of the error cannot be measured. *Id.* Because it will be "almost impossible" for the government to prove beyond a reasonable doubt the harmlessness of this error, "the efficiency costs of letting the government try to make the showing are unjustified." *Id.* A defendant's right to choose his own attorney falls under this rationale. *Id.* (citing *United States v. Gonzalez-Lopez*, 548 U.S. 140, 149–50 & n.4 (2006)). Finally, structural error has been found where the error is of a kind that always results in fundamental unfairness. *Id.* "For example, if an indigent

8

defendant is denied an attorney or if the judge fails to give a reasonable-doubt instruction, the resulting trial is always a fundamentally unfair one." *Id.* (citing *Gideon v. Wainwright*, 372 U.S. 335, 343–45 (1963); *Sullivan v. Louisiana,* 508 U.S. 275, 279 (1993)). These are not rigid categories, and "more than one of these rationales may be part of the explanation for why an error is deemed to be structural." *Id.* But "one point is critical: An error can count as structural even if the error does not lead to fundamental unfairness in every case." *Id.*

Here, there are compelling arguments for treating the state court's error as structural. The right to "remain inactive and secure" has important purposes beyond protecting against erroneous convictions. It upholds the fundamental structure of our accusatorial system by ensuring that the government *independently* carries its burden of proof. *See In re Winship*, 397 U.S. 358, 364 (1970) ("Due process commands that no man shall lose his liberty unless the Government has borne the burden of convincing the factfinder of his guilt.") (quoting *Speiser v. Randall*, 357 U.S. 513, 526 (1958)); *see also* Fed. R. Crim. P. 29. Indeed, as discussed above, the requirement that the "proponent of the . . . charge must evidence it," *Taylor*, 436 U.S. at 483 n.12 (citation omitted), is the "foundation of the administration of our criminal law," *id.* at 483 (citation omitted). And the Supreme Court has long recognized that this requirement arises from the common law's "devotion to human liberty and individual rights," which is embodied in our constitutional order. *Coffin*,

9

156 U.S. at 460; *see also Estelle*, 425 U.S. at 503 ("The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice" that is protected by the Fourteenth Amendment."). There is also fundamental unfairness in allowing an error that undermines the most basic structure of our criminal prosecution system to stand. Defendants make strategic decisions about whether to go to trial and what to present at trial with the assumption that their right not to have to present a defense unless and until the prosecution makes a prima facie case is intact. It may be that in some cases forcing the defendant to testify before the prosecution's case is completed will make no difference to the outcome. But that is not always true. *See generally Estelle*, 425 U.S. at 504 ("The actual impact of a particular practice on the judgment of jurors cannot always be fully determined. But this Court has left no doubt that the probability of deleterious effects on fundamental rights calls for close judicial scrutiny."). It is not hard to imagine how disrupting the proper order of proof could infect the reliability of an entire trial. But more to the point, the precise structure of criminal trials was established intentionally—choices were made to protect the liberty of the individual against the power of the state. Such important considerations should not be tossed aside for minor efficiency objectives.

Nonetheless, based on the current state of Supreme Court precedent, I cannot conclude that the state court's decision to require Galvez to testify (or lose his right

to do so) before completion of the prosecution's case "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Perhaps this means that the foundational principles undergirding a defendant's right to remain "inactive and secure" are so well-established and ubiquitous that what happened here is an outlier. One can hope.

I respectfully concur.